

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00717-CV

**ELIZABETH BENAVIDES ELITE AVIATION, INC.,**
Appellant

v.

**CITY OF LAREDO**,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2017CVK002669-D3
Honorable Beckie Palomo, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed: April 29, 2020

AFFIRMED

Elizabeth Benavides Elite Aviation, Inc. ("Elite") appeals the trial court's order granting the City of Laredo's plea to the jurisdiction. Elite contends the trial court erred in granting the City's plea because the City was engaged in a proprietary function when it entered into a lease agreement with Elite; therefore, the City is not immune from suit. We affirm the trial court's order.

## BACKGROUND

In 2006, Elite and the City entered into a lease agreement for a 2,500 square foot tract of land at the Laredo International Airport. The lease provided the leased premises would be used

"solely for the purpose of storage and dispensing of aviation fuels for fueling aircraft and no other use of the leased premises is permitted." Under the terms of the lease, Elite agreed to construct a concrete fuel containment pad for the installation of aboveground fuel storage tanks.

In 2019, Elite filed a cross-claim against the City in a pending lawsuit originally filed by Laredo Jet Center. At the time of the hearing on the City's plea to the jurisdiction, Elite had filed a third amended cross-claim. The only cross-claim asserted against the City in the live pleading was a breach of contract claim. In its pleading, Elite alleged the City was acting in its proprietary capacity when it entered into the lease agreement with Elite.

In its plea to the jurisdiction, the City asserted it was protected by governmental immunity against Elite's cross-claim and "did not waive immunity and consent to this suit and the allegations made by Elite do not waive the governmental immunity afforded to [the] City." In its response to the City's plea, Elite again asserted the City "was acting in its proprietary capacity at the time it entered the lease contract with Elite."

At the hearing on the City's plea to the jurisdiction, the City's attorney acknowledged the City's plea was based on the pleadings and the facts alleged in the pleadings. Elite's attorney relied on Elite's written response but noted Elite alleged the City was acting in its proprietary capacity when it entered the lease, thereby waiving its immunity. The trial court took the matter under advisement and subsequently signed an order granting the City's plea and dismissing Elite's cross-claim against the City. Elite appeals.

## STANDARD OF REVIEW

"When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009) (internal quotation marks omitted). "Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction

is a question of law reviewed *de novo*." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (emphasis in original).

## GOVERNMENTAL/PROPRIETARY DICHOTOMY

"The governmental/proprietary dichotomy recognizes that immunity protects a governmental unit from suits based on its performance of a governmental function but not a proprietary function." *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018). "[The] dichotomy is based on the reality that sovereign immunity is inherent in the State's sovereignty, and municipalities share that protection when they act as a branch of the State but not when they act in a proprietary, non-governmental capacity." *Id*. (internal quotation marks omitted). Accordingly, the performance of a proprietary function subjects a municipality "to the same duties and liabilities as those incurred by private persons and corporations." *Id*. (internal quotation marks omitted).

Under the Texas Constitution, the Legislature is authorized to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary." TEX. CONST. art. XI, § 13. Exercising that authority, the Legislature enacted section 101.0215 of the Texas Tort Claims Act ("Act") which generally defines governmental functions as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a). The Act provides a non-exclusive list of thirty-six governmental functions. *Id*.

The Act generally defines proprietary functions as "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *Id*. § 101.0215(b). The Act also provides a non-exclusive list of three proprietary functions. *Id*. The

proprietary functions of a municipality do not include those governmental functions expressly enumerated in section 101.0215(a) of the Act. *Id*. § 101.0215(c).

As the Texas Supreme Court has explained, the governmental functions of a municipality generally "consist of a municipality's activities in the performance of purely governmental matters solely for the public benefit." *Wasson Interests, Ltd.*, 559 S.W.3d at 147 (internal quotation marks omitted). Conversely, proprietary functions "are those performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality, and not as an arm of the government." *Id*. (internal quotation marks omitted). Proprietary functions are not performed as a branch of the state but are performed by the municipality acting on its own behalf. *Id*. at 149. As a result, proprietary functions are "usually activities that can be, and often are, provided by private persons." *Id*. at 147 (internal quotation marks omitted).

When the Act does not expressly enumerate a municipality's activity as governmental or proprietary, the Texas Supreme Court has "fleshed out" the general definitions and instructed the courts to consider the following four factors in determining whether a City's act was governmental or proprietary: (1) was the City's act "mandatory or discretionary," (2) was the City's act "intended to benefit the general public or the City's residents," (3) was the City "acting on the State's behalf or its own behalf" in undertaking the activity; and (4) was the City's act "sufficiently related to a governmental function to render the act governmental even if it would otherwise have been proprietary." *Hays St. Bridge Restoration Group v. City of San Antonio*, 570 S.W.3d 697, 705 (Tex. 2019) (quoting *Wasson Interests, Ltd.*, 559 S.W.3d at 150).

**ANALYSIS**

In this case, the issue presented is whether the City was acting in its proprietary capacity in entering into the lease agreement with Elite, thereby waiving its immunity. As the Texas Supreme Court has explained:

We hold that, to determine whether governmental immunity applies to a breach-of-contract claim against a municipality, the proper inquiry is whether the municipality was engaged in a governmental or proprietary function when it entered the contract, not when it allegedly breached that contract. Stated differently, the focus belongs on the nature of the contract, not the nature of the breach.

*Wasson Interests, Ltd.*, 559 S.W.3d at 149.[1]

Although Elite's brief focuses on the four factors the Texas Supreme Court has "fleshed out" to be considered when the Act does not expressly enumerate a municipality's activity as governmental or proprietary, *Hays St. Bridge Restoration Group*, 570 S.W.3d at 705, we need not resort to those factors in our analysis because both the Act and the Texas Transportation Code expressly enumerate airports as a governmental function. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(10); TEX. TRANSP. CODE ANN. § 22.002(a)(2). As the Texas Supreme Court has explained, legislative enumerations of particular functions as governmental "aid our inquiry" in cases involving contract claims as well as tort claims. *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 367 (Tex. 2019). Although the Act simply lists "airports" as a governmental function, TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(10), the Code identifies "the planning, acquisition, establishment, construction, improvement, equipping, maintenance, operation, regulation, protection, and policing of an airport" as "public and governmental functions, exercised for a public purpose, and matters of public necessity." TEX. TRANSP. CODE ANN. § 22.002(a)(2).

In *Vizant Techs., LLC*, the Texas Supreme Court applied the above-cited provisions of the Act and the Code in analyzing whether a local governmental entity was engaged in a governmental

---

[1] Because we focus on the nature of the contract, we disregard the arguments made in the City's plea and at the hearing regarding Elite's alleged abandonment of the lease. Those arguments focused on actions Elite took after the execution of the lease in allowing Laredo Jet Center and/or John Holler to use the leased premises and operate the fuel farm sometime after the lease was signed and after Elite built the concrete fuel containment pad and installed two aboveground fuel storage tanks.

function in entering into a contract "to analyze [an] airport's payment-processing costs (including costs for processing credit-card payments) and to provide recommendations on how the airport could reduce those costs." 576 S.W.3d 364. Quoting the above-cited provisions from the Code and the Act, the court held the entity was engaged in a governmental function in entering into the contract because the contract was entered into "for the purpose of analyzing and reducing the airport's expenses." *Id*. at 367.

Here, Elite attached both its lease with the City and the City's ordinance approving the lease to its third amended cross-claim. Having reviewed the terms of the lease and the facts alleged by Elite regarding the nature of its operation, we hold the City was engaged in a governmental function in entering into the lease. We note the recitals in the City's ordinance state the lease was being recommended for city council approval "in furtherance of the development of the Laredo International Airport and as support to the maintenance and operation of the Laredo International Airport." We further note, the recitals in the lease agreement also state the City "has determined that it is advantageous to itself, its citizenry, and the operation of its airport to lease the demise[d] premises located on the airport to" Elite. Therefore, based on the allegations in Elite's pleading regarding its use of the leased premises at the airport, we hold the trial court properly granted the City's plea because the City was engaged in a governmental function in entering into the lease with Elite.

## CONCLUSION

The trial court's order is affirmed.

Irene Rios, Justice